THOMAS B. PARKER & others *vs.* ROCHESTER GERMAN INSURANCE COMPANY.

Essex.   November 7, 1894. — January 1, 1895.

Present: FIELD, C. J., ALLEN, KNOWLTON, & BARKER, JJ.

*Fire Insurance — Power of Special Agent to vary Condition of Policy — Oral Contract of Insurance.*

An agent of an insurance company, to whom the company had intrusted blank policies of the Massachusetts standard form, signed by the president and secretary, with authority to countersign and issue such policies, " and by writing indorsed thereon to renew any of such policies, or to vary the risk therein," and providing that all of his powers are to be exercised subject to the rules and regulations of the company, " and, when provision is made therefor in such policy in the manner provided therein," has no authority to give an oral assent to a removal of property insured by a policy containing a condition requiring the written or printed assent of the company to such removal.

A count upon an oral contract to insure property in a place to which it has been removed during the existence of a policy of insurance thereon is not sustained by proof of an agreement to transfer the policy so as to cover the property in the new place.

CONTRACT, in two counts.   The first count was upon a policy of insurance for $1,000, issued by the defendant, against loss by fire on certain property of the plaintiffs in Lynn ; and the second count was upon an oral contract of insurance on the same property.   Trial in the Superior Court, before *Richardson*, J., who, at the defendant's request, ruled that there was no evidence to sustain the second count; and ordered a verdict for the defendant upon that count.   The defendant also requested the judge to rule that the plaintiffs could not recover upon the first count; but the judge declined so to rule.   The jury returned a verdict for the plaintiffs on the first count; and the judge reported the case for the determination of this court.   If the ruling as to the first count was correct, judgment was to be entered for the plaintiffs on the verdict; if the ruling was wrong, judgment was to

be entered for the defendant upon the first count. If the ruling upon the second count was correct, judgment was to be entered for the defendant upon that count; but if the ruling was erroneous, the verdict upon the second count was to be set aside, and the case to stand for trial upon that count, unless the verdict upon the first count was sustained. The material facts appear in the opinion.

*H. F. Hurlburt,* (*E. T. McCarthy* with him,) for the plaintiffs.

*W. H. Niles,* for the defendant.

ALLEN, J. By St. 1887, c. 214, § 60, which was in force at the time of issuing the plaintiffs' policy, a standard form of policies of insurance against fire was provided to which insurance companies were required to conform, with certain exceptions not material here. The plaintiffs' policy was in this standard form, and it contained the following provision : " This policy shall be void . . . if the insured now has or shall hereafter make any other insurance on the said property without the assent in writing or in print of the company, or if, without such assent, the said property shall be removed, except that, if such removal shall be necessary for the preservation of the property from fire, this policy shall be valid without such assent for five days thereafter." No such necessity for a removal existed ; but the property was removed to another building without the assent in writing or in print of the company. The plaintiffs rely, however, upon an oral agreement made by the defendant's agents to transfer the policy so that it would cover the property after its removal, and the jury by its verdict has found that such oral agreement was made. The first question is, whether the policy can be saved in this way ; and this depends on the extent of the agents' real or apparent authority.

The agents held a written power of attorney which authorized them " to receive proposals for insurance against loss or damage by fire in Lynn and its vicinity, to fix rates of premium upon the same, to receive such premiums, and to countersign policies of insurance when signed by the president and attested by the secretary of said company, and issue the same upon such proposals therefor, and by writing indorsed thereon to renew any of such policies, or to vary the risk therein, or to permit the assured in any such policy to convey the property insured therein and assign said policy to the person to whom such conveyance is

made; but all powers of said agent are to be exercised subject to and in accordance with the rules and regulations of said company, and such instructions as it may from time to time give, and, when provision is made therefor in such policy, in the manner provided therein." One of the agents testified that they held policies of the defendant company signed in blank by its president and secretary, and had authority to fill out the blanks, and to countersign the policies; and they took risks upon their own judgment, fixed rates, issued policies before submitting the risks to the company, and had a right to transfer policies from one place to another without consulting with the company. He also testified that a clerk employed by them had similar authority as to making transfers; but we need not consider whether the agents' authority in this respect could be deputed by them to a clerk, no question of this kind having arisen at the trial.

If in issuing a policy the company itself had wished to dispense with the provision as to a removal of the property insured, or any other provisions contained in the standard form, the statute provided as follows: "No fire insurance company shall issue fire insurance policies on property in this Commonwealth, other than those of the standard form herein set forth, except as follows: . . . Seventh, A company may write upon the margin or across the face of a policy, or write or print in type not smaller than long primer upon separate slips or riders to be attached thereto, provisions adding to or modifying those contained in the standard form; and all such slips, riders, and provisions must be signed by the officers or agent of the company so using them." St. 1887, c. 214, § 60. A policy would be binding upon the company though issued in violation of the foregoing provision; St. 1887, c. 214, § 105; but the various provisions respecting the standard form of policies are significant as bearing upon the extent of the agents' authority. The policies signed in blank by the defendant's president and secretary, which were in the agents' possession, were no doubt in this standard form. The report contains no intimation to the contrary. There is nothing to show that the agents had any authority to vary the standard form; but if they had, it would seem probable that they could only do so by inserting provisions or attaching slips in the manner prescribed by the statute. And as their authority

in respect to issuing policies was thus limited, their subsequent assent to a removal of the property, if they were authorized to give such assent, as no doubt they were, must be expressed in the same manner.

Accordingly, in two recent cases it has been said that even a general agent, with full authority, could not waive the express requirement of a writing in a case like this. *Kyte* v. *Commercial Union Assurance Co.* 144 Mass. 43. *Putnam Tool Co.* v. *Fitchburg Ins. Co.* 145 Mass. 265. See also *Porter* v. *United States Ins. Co.* 160 Mass. 183; *Smith* v. *Niagara Ins. Co.* 60 Vt. 682; *Tarbell* v. *Vermont Ins. Co.* 63 Vt. 53. In the present case, the agents had not full general authority, but their authority was limited; and it did not enable them to give a valid oral assent to the removal of the property.

It might, however, be suggested that the agents orally agreed to give a written assent in the future to the removal of the property, and that such oral agreement is binding upon the defendant. This position, if tenable, would to a great extent do away with the protection and safeguards which the requirement of a writing was designed to secure. There is nothing to show that the agents had authority to enter into such oral agreement in behalf of the company, though perhaps they might themselves be bound thereby.

It might further be suggested that the agents could by indirection evade the provision requiring a written assent to the removal; that is, that they might consent to a cancellation of the policy, and then agree orally to issue a new policy to the plaintiffs upon their property in the place to which it had been removed. Whether the agents had power in any case to bind the defendant by an oral agreement to issue a policy, we need not inquire; but, if they had, it does not follow that they could also bind the defendant by an oral assent to the removal of the property. If direct authority to do a certain thing is denied, it is not to be inferred or implied because by possibility substantially the same result may be reached by indirection.

The plaintiffs contend that there was evidence for the jury of an oral contract to insure their property in the place to which it was removed. The presiding justice rightly ruled that there was no evidence to sustain this view. The testimony is clear

and decisive to show that what the plaintiffs or the agents talked about was the transfer of the existing policies so as to cover the property in the new place.*   No question arises, therefore, as to the agents' power to bind the defendant by such oral contract.

We are therefore forced to the conclusion that, according to the terms of the report, the entry must be,

*Judgment for the defendant.*

---

* The evidence upon this point was that one of the plaintiffs said to one of the defendant's agents, " We have hired the building opposite, and we shall want you to transfer our policies there so as to cover us "; and he replied, " Very well, send your policies over when you get ready and I will cover you."