MARGARET J. PRINGLE *vs.* SPRING GARDEN INSURANCE COMPANY.

Suffolk.    January 11, 1910. — February 23, 1910.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & SHELDON, JJ.

*Insurance,* Fire. *Agency. Estoppel.*

One who has been appointed by the authorized agents of a fire insurance company a "subordinate agent" and has received from the insurance commissioner a license, still existing, stating that he has complied with the laws relating to agents of such companies and is authorized to transact within this Commonwealth, for the company in question, "the business of fire insurance so far as he may be

legally empowered to do so by the aforesaid company as its sub-agent," but who has not been authorized by the insurance company nor by its agents who appointed him, nor by any other person acting for the company, to make contracts of insurance or to make indorsements on policies or to assent to removals of property, cannot bind the insurance company by his assent to the removal of certain household furniture covered by a policy issued by the company in the Massachusetts standard form upon such property in a certain building, by receiving such policy from its holder and agreeing to have it changed to cover the property when removed to another building, and his acts and promises in this regard cannot estop the insurance company, when sued upon the policy, from setting up the defense that the insured property when destroyed by fire had been removed from the premises described in the policy without the assent in writing or in print of the company when such removal was not necessary for the preservation of the property from fire.

CONTRACT on a policy of fire insurance in the Massachusetts standard form as prescribed by R. L. c. 118, § 60, covering household furniture, wearing apparel and other personal property contained in a double frame dwelling house and its additions at No. 4 Riverside Street in that part of Boston called Roxbury, and destroyed by fire on April 12, 1908, after their removal to No. 70½ Marlborough Street in Chelsea. Writ in the Municipal Court of the Roxbury District of the City of Boston dated May 22, 1908.

In the Superior Court the case was submitted to *Crosby*, J., without a jury on an agreed statement of facts, which was as follows:

The number of the policy was 28571. It was dated January 12, 1906, and was for three years. The amount of the insurance was $500.

The policy contained the words, "This policy shall not be valid unless countersigned by the duly authorized agent of the company at Boston, Mass.," and was countersigned at Boston "Darling & Russell, Agents." On or about May 27, 1906, the plaintiff removed her furniture and other property described in the policy to No. 75 Sixth Street in Chelsea. On June 6, 1906, the following indorsement was made upon the policy by Darling and Russell: "Boston, June 6, 1906. On and after date, this policy shall attach on property as herein described while being removed to and contained in frame dwelling situate 75 Sixth St, Chelsea, Mass, and during removal this policy to attach in each building or locality in proportion as the value in each bears to that in all, and after ten days from date in new

location only and not as hereinbefore. Attached to policy No. 28571 Spring Garden Insurance Co. Darling & Russell, Agents."

This policy was a renewal of policy No. 5081 issued by the defendant to the plaintiff on January 12, 1903, for the term of three years, insuring the plaintiff in the same amount on the same or similar property "contained in and on brick building situate No. 4 Burke Street, corner of and being No. 1011–13 Tremont Street, Boston, Mass." The following indorsements appear on said policy No. 5081:

"Boston, December 7, 1903. On and after date this policy shall attach on similar property while being removed to and contained in double frame dwelling house situated No. 9 Reeds Court, Boston, Mass. Attached to policy No. 5081 Spring Garden Insurance Co. Darling & Russell, Agents."

"Boston, October 23, 1905. On and after date this policy shall attach on similar property while being removed to and contained in double frame dwelling house No. 4 Riverside Park, Roxbury District, Boston, Mass. Attached to policy No. 5081 Spring Garden Insurance Co. Darling & Russell, Agents."

"November 6, 1905. Endorsement of October 23, 1905, should have read No. 4 Riverside *Street* instead of Riverside *Park*, as reported. Attached to policy No. 5081 Spring Garden Insurance Co., Darling & Russell, Agents."

On June 18, 1907, the plaintiff removed the property described in the policy No. 28571 from the house No. 75 Sixth Street to a house at No. 70½ Marlborough Street in Chelsea. This removal was not necessary for the preservation of the property described in the policy from fire and no assent in writing or in print of the defendant was given to such removal.

On April 12, 1908, a fire occurred at No. 70½ Marlborough Street in Chelsea, and the property described in the policy was totally destroyed. Within a few days thereafter, the plaintiff's attorney called upon one Herbert F. Blood, a special agent of the defendant, and told him that he represented the plaintiff, that she was burned out in the conflagration and that she had a policy in the defendant company. Blood told the plaintiff's attorney that he would look into the matter and advise him.

On April 17, 1908, Blood wrote to the plaintiff's attorney as

follows: " Referring to the Pringle matter, Chelsea, about which you spoke to me at my office yesterday, have looked up our records and found that on January 12, 1906, we issued a policy to Margaret J. Pringle, covering household furniture at No. 4 Riverside Street, Roxbury, Mass; on June 6, 1906, the insurance was transferred to No. 75 Sixth Street, Chelsea.  I have examined the building to-day and found that there is no damage resulting from the conflagration of last Sunday, therefore there can be no claim under this policy."

Thereafter there was no communication between the plaintiff or the plaintiff's attorney and the defendant or Darling and Russell or Blood except that on May 4, 1908, the plaintiff's attorney called at Blood's office.  Blood was out, and the plaintiff's attorney left word that he had called.

On May 22, 1908, this action was brought.

On January 1, 1903, the firm of Darling and Russell, having a usual place of business at No. 55 Kilby Street, Boston, Mass., were the general agents of the defendant for Boston, Everett, Chelsea, and certain other places, duly authorized by the defendant to issue policies of fire insurance and make indorsements thereon.  Darling and Russell also were empowered by the defendant to appoint subordinate agents of the company.

On January 1, 1903, Darling and Russell notified the insurance commissioner that they had appointed as " subordinate agent " of the defendant one Jesse F. Rogers of Roslindale, Mass. ; and on January 3, 1903, the insurance commissioner issued to Rogers a license stating that the Spring Garden Insurance Company was authorized through licensed, resident agents, to transact the business of fire insurance in this Commonwealth, and that Rogers " has duly complied with the laws relating to agents of such companies and is authorized to transact within this Commonwealth, for the aforesaid company, the business of fire insurance so far as he may be legally empowered to do by the aforesaid company as its sub-agent."

Darling and Russell continued to be such agents until the latter part of the year 1908, and Rogers until July 1, 1908, from year to year received from the insurance commissioner a certificate stating that his license was renewed and was continued in force for the period of one year from date.  Rogers was not author-

ized by the defendant nor by Darling and Russell, nor by any one else in behalf of the defendant, to make contracts of insurance, or to make indorsements on policies, or to assent to removals of property, nor did he during the period of his subordinate agency make any contracts of insurance, nor assent, in writing or in print, to removals of property, nor make any indorsement on any of the defendant's policies.

Both policies No. 5081 and No. 28571 were negotiated by Rogers from Darling and Russell, and on each occasion of removal he received the policy from the plaintiff, forwarded it to Darling and Russell, and upon its return by them, turned it over to the plaintiff when she called for it.

On or about June 15, 1907, the plaintiff took the policy No. 28571 to Rogers and directed that the policy be changed to cover her property at No. 70½ Marlborough Street, Chelsea, Mass. Rogers took the policy and told the plaintiff that he would arrange for the transfer of it and that the property would be covered at the new location.

Thereafter, the plaintiff saw Rogers once a week for a period of three or four weeks and on each occasion asked Rogers for her policy and Rogers replied that it had not been returned. On the last occasion, he told her that when it did return he would keep it for her until she called.

Neither Darling and Russell nor the defendant company ever had possession of the policy No. 28571 after June 6, 1906, when it was returned by Darling and Russell to Rogers who turned it over to the plaintiff.

Neither the defendant nor Darling and Russell before the bringing of this action knew that the plaintiff had given to Rogers the policy on or about June 15, 1907, nor of the conversations between the plaintiff and Rogers on that date and on later dates.

If these facts warranted a finding for the plaintiff damages were to be assessed in the sum of $500; if not, judgment was to be entered for the defendant.

The judge found for the defendant; and the plaintiff appealed.

*F. Juggins*, for the plaintiff, submitted a brief.

*W. L. Came*, for the defendant.

MORTON, J. Assuming without deciding that the special agent Blood had authority to waive the proof of loss and the

submission to arbitration, we do not find it necessary to decide whether the letter sent by him to the plaintiff's attorney could be found to constitute such waiver, since we are of opinion that the policy was void for want of the defendant's written or printed assent to the removal of the goods from Sixth Street to Marlborough Street. The policy expressly provided that it should be void if the property was removed without the written or printed assent of the company, except that, if a removal should be necessary for the preservation of the property from fire, the policy should be valid without such assent for five days thereafter. It is not contended that it was necessary for the protection of the property to remove it, or that the company or the general agents Darling and Russell, whose territory included Chelsea, assented in writing or in print to the removal. The contention is in effect that the company is estopped by reason of what occurred between the plaintiff and Rogers from setting up that there was no written or printed assent by it or its authorized agents to the removal. But it is expressly agreed that " Rogers was not authorized by the defendant nor by Darling and Russell, nor by any one else in behalf of the defendant, to make contracts of insurance, nor to make indorsements on policies, nor to assent to removals of property," and that he did not " during the period of his subordinate agency make any contracts of insurance, nor assent, in writing or in print, to removals of property, nor make any indorsement on any of the defendant's policies." It is also expressly agreed that " Neither the defendant nor said Darling and Russell prior to the bringing of this suit knew that the plaintiff had given to said Rogers said policy, on or about June 15, 1907 [the date when, as the plaintiff testified, she took the policy to Rogers to have it changed so as to cover the property at Marlborough Street], nor of the conversations between the plaintiff and said Rogers on that date and on later dates." There was nothing, therefore, in the nature of the authority which Rogers had, nor any such knowledge on the defendant's part of what had transpired between the plaintiff and Rogers as to estop the defendant from objecting that the policy was void for want of its written or printed assent to the removal of the property. The fact that Rogers had transmitted the policy from the plaintiff to Darling and Russell for their written or printed assent to previous re-

movals does not and cannot operate to estop the defendant from relying on the fact that no such written or printed assent was procured to the removal in question. It is not necessary to consider whether Rogers is personally liable to the plaintiff. It follows that the judgment in favor of the defendant must be affirmed.

<em>So ordered.</em>